UNITED STATES DISTRICT COURT
EASTERN DIVISION OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

ELLEN SPARKS,          )
                           )
     Plaintiff,      )
                           )         Action No.
v.                       )      5:15-cv-99-JMH
                           )
COUNTRYWIDE HOME LOANS,   )   **MEMORANDUM OPINION**
INC., et al.,         )      **AND ORDER**
                           )
     Defendants.     )

\*\*\*

This matter is before the Court on two Motions to Dismiss filed by six Defendants pursuant to Federal Rule of Civil Procedure 12(b)(6). The first Motion to Dismiss was filed by Defendants Select Portfolio Servicing, Inc. ("SPS"), Deutsche Bank National Trust Company, as Trustee for holders of the Harborview 2004-09 Trust a/k/a Deutsche Bank National Trust Company, as Trustee, on behalf of the registered Certificate Holders of Harbor View Mortgage Loan Trust 2004-09, Mortgage Loan Pass-Through Certificates, Series 2004-09 ("Deutsche Bank"), Mortgage Electronic Registration Systems, Inc. aka MERS ("MERS"), and Mary Ann Hierman, a MERS agent ("Hierman")[1] (collectively referred to

---

[1] As Defendants SPS et al. argue, Plaintiff fails to make a single specific allegation against Defendant Hierman or even mention Hierman in her Complaint. [DE 18-1 at 24]. For this reason, and for all the reasons set forth in this opinion, all claims against Hierman are dismissed with prejudice.

as "SPS et al."). [DE 18]. The second Motion to Dismiss was filed by Defendants Countrywide Home Loans, Inc. ("Countrywide") and Bank of America, N.A. ("BANA"). [DE 19].

Plaintiff filed Responses in Opposition to both Motions to Dismiss [DE 21, 22], and Defendants replied [DE 23, 24]. Without leave of Court, Plaintiff also filed a Supplemental Joint Response in Opposition to Defendants' Motions to Dismiss. [DE 25]. The Federal Rules of Civil Procedure do not permit the filing of a surreply without leave of the Court, nevertheless, the Court will regard Plaintiff's Supplemental Response as a Motion for Leave of Court. No new arguments having been made by Defendants in their Replies, the Court declines to consider Plaintiff's Supplemental Response. The Court being adequately advised, Defendants' Motions are ripe for decision.

After careful consideration of the Complaint, motions, responses, replies, and applicable law, the Court grants Defendants' Motions to Dismiss in their entirety.

### I. BACKGROUND

On April 14, 2015, Plaintiff, Ellen Sparks, appearing *pro se*, filed a Complaint against Defendants for various claims that stem from the origination and servicing of a refinance loan for her residence located at 214 South Hanover Avenue in Lexington, Kentucky. [DE 1]. Plaintiff set forth the following allegations in her Complaint.

## A. The 2004 Loan Agreement

Plaintiff alleges that, in or about 2004, seeking to refinance her single family home, she was promised certain terms and conditions by America's Wholesale Lender ("AWL")[2] for a loan agreement, most notably, a fixed interest rate of 4.25 percent for 30 years. [DE 1 at ¶12b-h]. Plaintiff alleges that on or about September 22, 2004, she signed various documents originated by AWL ("the 2004 Loan Agreement") to close her loan. [DE 1, ¶12b]. Plaintiff makes various allegations about the improper notarization of the loan documents surrounding the 2004 Loan Agreement. [DE 1, ¶12c,d,e,f]. Plaintiff also alleges that she did not receive copies of the signed, loan documents on the day of signing or thereafter despite requests to the notary but had to request the documents from the escrow company. [DE 1, ¶12e,f].

Plaintiff further alleges that, in 2007, upon receiving the loan documents from the escrow company, she discovered that the documents, including a Note, Mortgage, and Rider to the Note, were "defective" and not the documents she had agreed to or signed in September of 2004. [DE 1, ¶12f,g]. In particular, Plaintiff alleges that instead of including a fixed rate as promised by

---

[2] The Court notes that AWL, the lender of Plaintiff's original refinance loan, is not a named Defendant in this action. Although not spelled out by Plaintiff, it appears that Countrywide and AWL are one in the same as both entities are listed on the 2004 mortgage [DE 18-2] and because Countrywide modified Plaintiff's loan on June 2, 2008 [DE 18-4].

Defendants, the loan documents included an adjustable interest rate, as well as penalty and interest charge terms to which she allegedly did not agree. [DE 1, ¶12g]. Plaintiff alleges that the loan documents she actually signed in or about September 22, 2004, which Plaintiff believed contained a fixed interest rate, were "substituted cryptically and clandestinely" with forged loan documents containing an adjustable interest rate. [DE ¶12g].

Plaintiff further alleges that in an attempt to determine the authenticity of the loan documents from the escrow company, she then obtained copies of her mortgage records from the Fayette County Clerk's office, which she alleges included: (1) a Mortgage that contained forged signatures and improper notarization, (2) an Adjustable Rate Note, also not notarized and containing what Plaintiff believes to be a forged signature, (3) an Adjustable Rate Rider "purporting to be signed" but "neither signed nor initialed by plaintiff" and (4) an Assignment of Mortgage transferring the mortgage from MERS to Deutsche Bank. [DE 1, ¶12h]. Although not entirely clear from the Complaint, it appears that Plaintiff is pleading in the alternative: either (a) she was duped into signing a loan agreement with an adjustable interest rate when she believed she was getting a fixed interest rate or (b) the loan documents she signed, which she alleges included a fixed interest rate, were switched out for documents with forged

4

signatures that include a variable interest rate. [DE 1, ¶12f,g,h].

### B. Loan Payments

Plaintiff alleges that from 2005 to 2008, her monthly mortgage payments increased from $1,711.12 to over $4,000.00 as a result of the variable interest rate on her loan. [DE 1, ¶16.1]. However, as the Court understands, Plaintiff alleges to not have discovered the increased payment amounts until on or about November 10, 2007 when her payments began increasing and when Plaintiff was allegedly contacted by Defendant BANA with a threat of foreclosure if she did not make her payments current. [DE 1, ¶16]. Plaintiff then alleges that BANA informed her that her outstanding Note was $589,000 and could not explain the increase from the original loan amount of $532,000 despite Plaintiff's payments over the prior four years. *Id*.

Plaintiff alleges to have demanded a loan validation and confirmation from BANA under the Fair Debt Collection Practices Act but claims BANA did not provide the information and continued to threaten foreclosure if Plaintiff did not pay the full amount owed. *Id*. Plaintiff also alleges to have contacted BANA in writing seeking information regarding the variable interest rates and that BANA never responded. [DE 1, ¶17].

### C. Loan Modifications

Plaintiff alleges that in an attempt to obtain a better loan arrangement, she entered into a series of "novations" or loan modifications with BANA. [DE ¶18, 19].  The first modification indicates that Plaintiff entered into a modification agreement with Countrywide on June 13, 2008, effective August 1, 2008, converting the adjustable interest rate to a fixed rate of 5.25 percent and keeping the October 1, 2034 maturity date.  [DE 18-4].

Plaintiff also alleges to have attempted to enter into a loan modification with BANA on or about October 7, 2008. [DE 1, ¶76]. Plaintiff alleges to have been contacted by BANA and instructed that if she did not pay her mortgage for three consecutive months, BANA guaranteed a new note with better terms and a decreased monthly rate, and that Plaintiff would not be defaulted or foreclosed upon by her three month failure to pay. *Id.* Plaintiff alleges that in reliance on BANA's promise of a $772.39 decrease in her monthly mortgage payment, she failed to pay her mortgage for three months. [DE 1, ¶76a-b]. Plaintiff further alleges that when she made the decreased payment amount in the fourth month, she was told by BANA that they had no record of her loan being novated, she was in default, and that she would be foreclosed upon because her default was over 90 days without payment. [*Id.*, ¶76c-d].

6

A second modification occurred in or about April of 2010. [DE 1, ¶19]. This modification was executed by Plaintiff on April 1, 2010 as part of the Home Affordable Modification Program in which a series of scheduled reduced fixed interest rates were established. [DE 18-5].

### D. Plaintiff's Claims

On the basis of the facts alleged above, Plaintiff asserts violations against all Defendants under the Fair Credit Reporting Act, 15 U.S.C. § 1688 *et seq.*; the Federal Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*; the Racketeering Influenced Corrupt Organization Act, 18 U.S.C. §§ 1961 *et seq.*; the Truth in Lending Act, 15 U.S.C. § 1601, *et seq.*; the Real Estate Procedures Act, 12 U.S.C. § 2607; and also claims Defendants are jointly and severally liable to her on the theories of fraudulent intentional misrepresentation, breach of contract, negligence, and defamation. In addition to monetary damages, Plaintiff seeks a declaratory judgment as to the rights and duties of the parties regarding the mortgage and note at issue and an accounting of Plaintiff's loan account from Defendants.

## II.  STANDARD OF REVIEW

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the plaintiff's complaint. If the plaintiff fails to state a claim upon which relief can be granted, a court may grant the motion to dismiss.

Fed. R. Civ. P. 12(b)(6). Rule 8(a)(2) states that, at a minimum, a pleading should contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court explained that in order to survive a Rule 12(b)(6), a complaint need not contain "detailed factual allegations," but must present something more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action's elements will not do." *Id.* at 555.

Although a court must accept as true all of the well-pleaded factual allegations contained in the complaint, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570), courts are not bound to accept conclusory allegations as true. *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265 (1986)). The factual allegations in a complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555-56 (citations omitted). Under this standard, only a claim which is "plausible on its face" will survive dismissal. *Id.* at 570; *Tam Travel, Inc. v. Delta Airlines, Inc.*, 583 F.3d 896, 903 (6th Cir. 2009). "A claim is plausible when it contains facts that allow the court to draw the reasonable inference that the defendant is liable for the alleged misconduct." *Ashcroft*, 556 U.S. at 678. If it appears beyond doubt that the

plaintiff's complaint does not state facts sufficient to "state a claim to relief that is plausible on its face," then the claims must be dismissed.  *Twombly,* 550 U.S. 544 at 570; *Weisbarth v. Geauga Park Dist.,* 499 F.3d 538, 542 (6th Cir. 2007).

"*Pro se* complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011).  At the same time, courts must place certain limits on the lenient treatment given to *pro se* litigants who are not "'automatically entitled to take every case to trial.'" *Farah v. Wellington*, 295 F. App'x 743, 748 (6th Cir. 2008) (quoting *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996)).  All complaints "'must contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory.'" *Tam Travel*, 583 F.3d at 903 (quoting *Edison v. State of Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007)).

When evaluating a Motion to Dismiss, the Court may consider any document attached to or incorporated in the Complaint that are central to the claims contained therein, and public documents of which the Court can take judicial notice, without converting the motion into a motion for summary judgment. *See Amini v. Oberlin College*, 259 F.3d 493 (6th Cir. 2001); *Weiner v. Klais & Co.*, 108 F.3d 86, 88-89 (6th Cir. 1997).  For this reason, when evaluating

Defendants' Motions to Dismiss, the Court may consider the documents attached to the motions to dismiss, including the 2004 Mortgage and Adjustable Rate Rider [DE 18-2; DE 19-2], Adjustable Rate Note [DE 19-1], Assignment of Mortgage [DE 18-3], 2008 Loan Modification Agreement [DE 18-4], and 2010 Home Affordable Modification Agreement [DE 18-5], all of which are central to Plaintiff's claims and all of which are documents for which the Court may take judicial notice.

## III. DISCUSSION

Plaintiff has asserted each of her claims against all Defendants, and both Motions seek to dismiss Plaintiff's claims in their totality based on substantially similar arguments, thus, the Court will address the Motions together herein.  Defendants argue that each of Plaintiff's claims fail to state a claim upon which relief may be granted and must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).  For the reasons articulated below, the Court agrees with Defendants.

### A. Counts I and II:  Plaintiff Has Failed to State A Claim Alleging Violations of the Fair Credit Reporting Act, Negligence or Defamation.

Plaintiff alleges in Counts I and II of her Complaint that the Defendants have violated the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1688 *et seq.,* by failing to properly and accurately apply payments made by Plaintiff toward her home loan thereby causing false and inaccurate documents to be filed with

the credit reporting agencies, including a Notice of Default. [DE 1 at ¶ 35-43]. Plaintiff claims that as a result of Defendants' alleged false and inaccurate reporting, her credit score dropped from approximately 700 to 465, causing a loss of credit worthiness, which has also resulted in increased tax liability and physical and mental damages to Plaintiff in an amount not less than $500,000. *Id.* As the Defendants demonstrate in their motions, Plaintiff's claims under the FCRA fail.

The FCRA is "aimed at protecting consumers from inaccurate information in consumer reports and at the establishment for credit reporting procedures that utilize correct, relevant, and up-to-date information in a confidential and responsible manner." *Jones v. Federated Financial Reserve Corp.*, 144 F.3d 961, 965 (6th Cir. 1998). Plaintiff's claim against Defendants is evaluated under 15 U.S.C. § 1681s-2(b), which authorizes a private right of action.[3] *See Stafford v. Cross Country Bank*, 262 F. Supp. 2d 776, 783 (W.D.Ky 2003).

Section 1681s-2(b) of the FCRA sets forth the "duties of furnishers of information upon notice of dispute." 15 U.S.C. § 1681s-2(b). Specifically, subsection (b) provides that a consumer who disputes an item on his credit report must first notify a

---

[3] As Defendants correctly argue, courts have readily recognized that no private cause of action exists under § 1681s-2(a). [DE 19 at 5, 18-1 at 8]. *See Morgan v. HSBC Mortg. Svcs., Inc.*, 930 F. Supp. 2d 833, 837 (E.D. Ky. 2013).

credit reporting agency, which must in turn give notice to the furnisher that provided the disputed credit information (e.g. a bank). *Id*. "This means that a furnisher of credit information...has no responsibility to investigate a credit dispute until *after* it receives notice of a dispute from a consumer reporting agency. Under the statutory language, notification from a consumer is not enough." *Stafford*, 262 F. Supp. 2d at 784 (emphasis in original).

Here, it is not clear to the Court that Plaintiff notified any credit reporting agency about her disputed payment information. Plaintiff states: "Plaintiff in compliance with the FCRA contacted to dispute the credit scores and history contesting the data" although Plaintiff does not specify which agencies, if any, she contacted and when the contact was made. [DE 1, ¶ 44.3]. Regardless, at this stage, and construing Plaintiff's Complaint liberally, the Court will accept that Plaintiff did indeed notify one or more credit agencies of her dispute. Nevertheless, this is insufficient to trigger a private right of action under the §1681s-2(b). *See Morgan v. HSBC Morg. Svcs., Inc.*, 930 F. Supp. 2d 833, 837 (E.D. Ky. 2013).

Rather, as Defendants argue, Defendants must have received notice of a dispute from a credit reporting agency. 15 U.S.C. § 1681s-2(b). Because Plaintiff has failed to allege that any Defendant received notice from a credit reporting agency of a

dispute or that a credit reporting agency provided Defendants with notice of her disputed payment information as required by § 1681s-2(b), Plaintiff has failed to state a cause of action based on the FCRA against all Defendants, and on this basis, Plaintiff's FCRA claim is dismissed. *See Stafford*, 262 F.Supp. at 784; *Yaldu v. Bank of America Corp.*, 700 F.Supp.2d 832, 843 (E.D.Mich 2012); *Gorman*, 584 F.3d at 1154; *Young v. Equifax Credit Info. Svs.*, 294 F.3d 631, 639 (5th Cir. 2002).

Even if Plaintiff did properly plead a claim under the FCRA, as Defendants further argue, her claims are also barred under the applicable statute of limitations. 15 U.S.C. § 1681(p). Section 1681(p) provides:

> An action to enforce any liability created under this subchapter may be brought in any appropriate United States district court, without regard to the amount in controversy, or in any other court of competent jurisdiction, not later than the earlier of—
>
> > (1) 2 years after the date of discovery by the plaintiff of the violation that is the basis for such liability; or
> >
> > (2) 5 years after the date on which the violation that is the basis for such liability occurs.

*Id.* Plaintiff alleges that on or about August of 2005, her monthly payments increased under the terms of the "bogus Note," and that a "valid dispute" began over her loan payments in or about November 10, 2007 when she discovered said increase. [DE 1, ¶¶16, 16.1].

Therefore, given these dates, the latest Plaintiff could have brought a FCRA claim was in November 2009, which was two years after the date of discovery of the violation that provides the basis for liability.  Plaintiff did not file this action until April 2015.  [DE 1].

Plaintiff argues that the damage from the alleged incorrect credit reporting is continuing, and therefore, the two year statute of limitation should not apply.  [DE 21, ¶2].  However, as Defendants' SPS et al. emphasize, other courts have declined to recognize the continuing injury argument in the case of FCRA claims.  *See e.g., Lawhorn v. Trans Union Credit Information Corp.*, 515 F. Supp. 19 (E.D. Mo. 1981).  Consequently, any FCRA claim Plaintiff makes against any Defendant is barred by the applicable statute of limitation and is dismissed.

Plaintiff also asserts state law claims related to the credit reporting on her loan [DE 1 at ¶¶35-43], which Defendants argue are preempted by the FCRA.  [DE 19 at 6-7].  The court agrees that the claims are preempted.  The FCRA contains two overlapping preemption provisions, § 1381h(e) and § 1681s-2.  *Morgan v. HSBC Mortgage Servs., Inc.*, 930 F. Supp. 2d 833, 838 (E.D. Ky. 2013).  Section 1681h(e) provides for immunity of certain types of state actions relating to the reporting of credit information, including defamation, invasion of privacy and negligence claims.  15 U.S.C. § 1681h(e); *see also Stafford v. Cross Country Bank*, 262 F. Supp.

2d 776, 784 (W.D. Ky. 2003). Without repealing § 1681h(e), the FCRA was amended to include an additional preemption provision, § 1681(b)(1)(F), which provides absolute immunity from all state law claims covered by § 1681s-2 (i.e. claims relating to furnishers of credit). *Stafford*, 262 F. Supp. 2d at 784.

There has been much debate about the interplay of the two preemption provisions, and the Sixth Circuit has not addressed this debate. Nevertheless, the Second, Fourth, and Seventh Circuits have concluded that the provisions do not conflict and that courts must analyze preemption under each provision. *Macpherson v. JP Morgan Chase Bank, N.A.*, 665 F.3d 45 (2d Cir. 2011); *Ross v. FDIC*, 625 F.3d 808 (4th Cir. 2010); *Purcell v. Bank of Am.*, 659 F.3d 622 (7th Cir. 2011). At least two courts within the Sixth Circuit have also opined that the two FRCA preemption provisions are consistent, and have analyzed preemption first under § 1681(b)(1)(F), with § 1681(h)(e) only being considered if the former does not apply. *See Morgan v. HSBC Mortgage Servs., Inc.*, 930 F. Supp. 2d 833, 839 (E.D. Ky. 2013); *Stafford,* 262 F. Supp. 2d at 785-786.

Following the analysis of our sister court in *Morgan*, the evaluation begins with whether Plaintiff's negligence and defamation claims are preempted by § 1681(b)(1)(F). *See Morgan*, 930 F. Supp. 2d at 839 (E.D. Ky. 2013). According to the Complaint, Plaintiff's negligence and defamation claims are based on the

15

allegation that Defendants reported false or incorrect information to the credit reporting agencies, which is conduct regulated under § 1681s-2. [DE 1 at 35-43]. Therefore, since § 1681(b)(1)(F) provides absolute immunity from all state law claims covered by § 1681s-2, Plaintiff's state law claims are preempted by § 1681t(b)(1)(F), and dismissal of these claims is appropriate.

### B. Count II: Plaintiff Has Failed to State a Claim Alleging a Violation of the Federal Fair Debt Collection Practices Act.

Plaintiff asserts violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.,* against all Defendants in Count II of her Complaint.[4] [DE 1, ¶44]. The FDCPA prohibits various wrongful conduct in the collection of a debt, including harassment (§ 1692d), making false statements (§ 1692e), engaging in unfair practices (§ 1692f), and failing to provide consumers certain information about the debt (§ 1692g). *See* 15 U.S.C. § 1692d-g; *see also Ray v. Citibank (S. Dakota), N.A.*, 187 F. Supp. 2d 719, 722 (W.D. Ky. 2001). Debt collectors may be subject to civil liability when they violate any of these provisions and suit is brought within one year from the date on which the violations occur. *See* 15 U.S.C. § 1692k.

---

[4] Plaintiff incorrectly cites to 15 U.S.C. §§ 1681, *et seq.,* the Fair Credit Reporting Act, when referring to the Fair Debt Collection Practices Act in her second cause of action. [DE 1, ¶44]. Having addressed Plaintiff's claims under the Fair Credit Reporting Act, *supra*, the Court will now address Plaintiff's FDCPA allegations set forth in paragraph 44 of her Complaint.

### 1. Debt Collectors

The FDCPA, however, does not apply to every entity that attempts to collect a debt. The FDCPA's provisions generally apply only to those who meet the statutory definition of "debt collector." *Montgomery v. Huntington Bank*, 346 F.3d 693, 698 (6th Cir. 2003). The term "debt collector" is statutorily defined, in relevant part, as:

> Any person who uses instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

*Id*. (quoting 15 U.S.C. § 1692a(6)). The statute further states that the term "debt collector" does not include "any officer or employee of a creditor while, in the name of the creditor, collecting debts for such creditor." 15 U.S.C. § 1692a(6)(A).

Plaintiff generally alleges that all Defendants violated the FDCPA [DE 1, ¶44], therefore, the Court must first determine whether Plaintiff has alleged that Defendants are "debt collectors" within the purview of the FDCPA. With regard to SPS, Plaintiff sufficiently alleges that SPS is a debt collector. Plaintiff states "Select Portfolio Servicing, Inc., a Utah business [hereafter SPS] purporting to be a "loan servicer" [aka debt collector for hire] apparently took over the collection process in or about December, 2012" [DE 1, ¶12], and "Plaintiff

believes the current loan servicer [collection agent] is defendant SPS, since 2012." [DE 1, ¶12a].

While not specifically labeling BANA a "debt collector," Plaintiff has alleged that BANA attempted to collect on a debt and that Plaintiff demanded a loan validation and confirmation from BANA pursuant to the FDCPA. [DE ¶16, 17]. Nevertheless, Plaintiff's allegations against BANA concern BANA's conduct as a lender. [DE 1, ¶¶12, 12a, 76]. Creditors, as opposed to "debt collectors," are generally not subject to the FDCPA. *See Montgomery v. Huntington Bank*, 346 F.3d 693, 698 (6th Cir. 2003); *Stafford v. Cross Country Bank*, 262 F. Supp. 2d 776, 794 (W.D. Ky. 2003). The FDCPA defines "creditor" as "any person who offers or extends credit creating a debt or to whom a debt is owed ... ." 15 U.S.C. § 1692a(4). Because all allegations are against BANA as a creditor, not a debtor, within the meaning of the FDCPA, all FDCPA claims against BANA are dismissed.

Plaintiff alleges that an Assignment of Mortgage is recorded with the Fayette County Clerk, assigning her mortgage from MERS to Deutsche Bank.[5] [DE 1, ¶12h]. The Court takes judicial notice of the assignment and notes that it was recorded on June 26, 2012 with the Fayette County Clerk. [DE 18-3, Assignment of Mortgage].

---

[5] Plaintiff alleges that the assignment of her mortgage from MERS to Deutsche Bank is void because she did not authorize the assignment, however, Plaintiff, as a stranger to the assignment, lacks standing to challenge its validity. *Yuille v. Am. Home Mortgage Servs., Inc.*, 483 F. App'x 132, 135 (6th Cir. 2012).

Plaintiff also alleges that her loan was in default at the time of assignment. [DE 1, ¶16]. Deutsche Bank, as an assignee of the mortgage after Plaintiff defaulted on her loan, is considered a "debt collector" within the purview of the FDCPA. *Bridge v. Ocwen Fed. Bank, FSB*, 681 F.3d 355, 362 (6th Cir. 2012)("[T]he definition of debt collector pursuant to § 1692a(6)(F)(iii) includes any non-originating debt holder that either acquired a debt in default or has treated the debt as if it were in default at the time of acquisition."). Therefore, viewing the Complaint in a light most favorable to Plaintiff, the Court finds that Plaintiff has sufficiently alleged Deutsche Bank to be a debt collector within the meaning of the FDCPA.

As to Defendant MERS, Plaintiff stipulates that MERS is not a debt collector. [DE 21, p. 8]. Likewise, Defendant Hierman, a MERS agent, is also not a debt collector. As to Defendant Countrywide, the Court determines that Plaintiff has failed to allege that it is a "debt collector" or performed any debt collecting activities within the meaning of the FDCPA. Likewise, all claims relating to violations of the FDCPA are dismissed against MERS, Hierman, and Countrywide.

### 2. FDCPA Statute of Limitations

Having determined that Plaintiff has alleged SPS and Deutsche Bank to be "debt collectors" as defined by the FDCPA, the next

question is whether Plaintiff's claims against each are timely.
In the Complaint, Plaintiff alleges:

> from 2008 to 2014, defendant violators of the act did
> so by attempting to collect a debt promoted efforts
> that included the demand for payment of a fraudulent
> debt in an excessive amount, repeatedly at all hours
> of the day and night, vis., before 8 a.m., and after
> 9 p.m., which included the contacting of third parties
> about the debt, in violation of the act; threatened to
> have plaintiff criminally arrested under a "civil debt
> warrant," a fraudulent devise and representation when
> no such instrument existed as a matter of law, told
> Plaintiff to either pay or she could "go to hell,"
> calling her a "cheat and deadbeat," and that "some day
> she'd pay for her corrupt sins."

[DE 1, ¶44].

SPS and Deutsche Bank argue that Plaintiff's FDCPA claims
must be dismissed as time-barred under the FDCPA's one-year statute
of limitations, 15 U.S.C. § 1692k(d), because Plaintiff does not
make allegations that either contacted her in violation of the
FDCPA on or after April 14, 2014, one year prior to the date
Plaintiff filed her Complaint.  [DE 18-1 at 10].  The Court agrees.

Plaintiff attempts to avoid the time bar under a "continuing
violation" theory, arguing that the FDCPA statute of limitations
does not apply because the damages to her is of a "continuing
nature."  [DE 21 at 7-8].  Nevertheless, the Sixth Circuit has
held that the continuing violation doctrine does not apply to a
mortgagor's claim under the FDCPA.  *See Slorp v. Lerner, Sampson
& Rothfuss*, 587 F. App'x 249, 259 (6th Cir. 2014).  For this

reason, the one-year statute of limitations set forth in the FDCPA bars any portion of Plaintiff's claims against SPS and Deutsche Bank that relate to violations of the FDCPA prior to April 14, 2014, while any alleged violations occurring after April 14, 2014 are not time barred.

### 3. Violations of the FDCPA

The final question for the Court with regard to the timely portion of the FDCPA claims is whether Plaintiff has sufficiently alleged that SPS and Deutsche Bank have engaged in conduct in violation of the FDCPA. Although "[s]pecific facts are not necessary" to comply with Rule 8(a)(2), the complaint must "'give the defendant fair notice of what the...claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Twombly*, 550 U.S. at 555) (alteration in original).

Plaintiff attributes a litany of alleged violations of the FDCPA, without specifying upon which portion of the FDCPA she relies, to all "defendant violators of the act" (which includes twenty-eight defendants total). From such broad allegations against a large and mostly anonymous "Doe" group of defendants, the Court cannot draw the reasonable inference that Defendants SPS or Deutsche Bank are liable for the misconduct alleged, because the Court cannot tell what activity SPS or Deutsche Bank are alleged to have done. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Since Defendants SPS and Deutsche Bank do not have fair notice of

what the FDCPA claims are against them and the grounds upon which they rest, Plaintiff's FDCPA claims against SPS and Deutsche Bank are dismissed on this basis as well.  *See Twombly*, 550 U.S. at 555.

In sum, Plaintiff claims under the FDCPA against Defendants are dismissed.  Plaintiff has not alleged that BANA, Countrywide, MERS or Hierman are debt collectors.  Any claims Plaintiff has against SPS or Deutsche Bank prior to April 14, 2014 are dismissed under the FDCPA one-year statute of limitation.  Plaintiff's claims against SPS and Deutsche Bank asserting violations of the FDCPA after April 14, 2014 are too conclusory and vague to state a claim for relief and are dismissed on this basis.

### C. Count VI: Plaintiff Has Failed to State a Claim Alleging a Violation of the Racketeering Influenced Corrupt Organization Act.

In Count Six of her Complaint, Plaintiff alleges violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968, against all Defendants.  RICO provides a private right of action for "[a]ny person injured in his business or property by reason of a violation of [18 U.S.C. § 1962]."  18 U.S.C. § 1964(c).  Therefore, a civil RICO claim must set forth the following requirements of 18 U.S.C. § 1962(c): (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity or collection of an unlawful debt.  *Heinrich*

*v. Waiting Angels Adoption Servs., Inc.,* 668 F.3d 393, 404 (6th Cir. 2012).

A "pattern of racketeering activity" requires at least two acts of "racketeering activity," which activities are set forth in § 1961(1). 18 U.S.C. § 1961(5). An "unlawful debt" is a debt which was incurred in an illegal gambling activity through an illegal gambling business, or a debt unenforceable because of usury laws and which was obtained through a business enterprise that loans money at a usury interest rate that is at least twice the enforceable rate." 18 U.S.C. § 1961(6); *Saglioccolo v. Eagle Ins. Co.*, 112 F.3d 226, 229 (6th Cir. 1997).

Defendants SPS et al. move to dismiss Plaintiff's RICO claim on the basis that Plaintiff's allegations are too conclusory, Plaintiff has not properly alleged either a pattern of racketeering activity or collection of an unlawful debt, Plaintiff has not plead the required "enterprise" element of a RICO claim, and Plaintiff's claim is time-barred under RICO's four-year statute of limitation. [DE 18-1]. Defendants Countrywide and BANA move to dismiss the RICO claim on the basis that collection of an unlawful debt under RICO does not include collection on a home loan and on the basis of the four-year statute of limitation. [DE 19].

Plaintiff's RICO claim recites several portions of the RICO statute along with the following two more specific allegations:

23

> Plaintiff alleges that the sections 1343, 1341, 1344 place the acts of defendants within the purview of the statute and thus must be imposed on each targeted defendants. Inter alia, institutional bank fraud is included as prohibited corrupt practices amounting to racketeering under sub section (B). [DE 1, ¶161].

> Plaintiff has sufficiently alleged false debt [one not owed, due or overinflated] was being collected, that at least two efforts and attempts were made to falsely collect, that the evidence shows intent to defraud and cheat plaintiff in a scheme to fabricate the truth of the error then add additional false charges to the loan, then and now, never due. [DE 1, ¶162].

In her opposition to Countrywide and BANA's Motion to Dismiss, Plaintiff argues that additional support for her RICO claim can be found in the General Allegations and Fraud sections of her Complaint. [DE 22, ¶IV.]. As outlined above, in those sections of her Complaint, Plaintiff complains that the note she signed, which she alleges included a fixed interest rate, was switched out for an adjustable rate note and that she was fraudulently induced into not paying her mortgage for three months in reliance on a promise of a loan modification. [DE 1, ¶¶ 12-12h].

"Section 1962 prohibits various types of activity that provides different theories upon which to base a claim ... [likewise] it is essential that a plaintiff specify upon which subsection of Section 1962 his cause of action is predicated." *James v. Meow Media, Inc.*, 90 F. Supp. 2d 798, 812 (W.D. Ky. 2000). Plaintiff has not sufficiently made clear which subsections of the RICO statute upon which she relies but rather alleges that all

Defendants have violated "18 U.S.C. 1961-1964, et al." [DE 1, ¶159]. Given that Plaintiff is appearing *pro se*, the Court will accept that Plaintiff is attempting to allege RICO violations based on both portions of § 1962(c): a pattern of racketeering activity and collection of an unlawful debt by Defendants.[6] Regardless, for either a claim of unlawful racketeering activity or collection of unlawful debt, Plaintiff must also establish that an "enterprise" was involved. *See Jackson v. Sedgwick Claims Mgmt. Servs., Inc.*, 731 F.3d 556, 562 (6th Cir. 2013) (en banc); *James v. Meow Media, Inc.*, 90 F. Supp. 2d 798, 813 (W.D. Ky. 2000).

### 1. Enterprise

"In order to establish the existence of an "enterprise" ... a plaintiff is required to prove:

> (1) an ongoing organization with some sort of framework or superstructure for making and carrying out decisions;
>
> (2) that the members of the enterprise functioned as a continuing unit with established duties; and
>
> (3) that the enterprise was separate and distinct from the pattern of racketeering activity in which it was engaged.

Ouwinga v. Benistar 419 Plan Servs., Inc., 694 F.3d 783, 793-94 (6th Cir. 2012); see also Boyle v. United States, 556 U.S. 938,

---

[6] Plaintiff has bolded the term "collection of unlawful debt" throughout her recitation of the RICO statute and also uses the word "racketeering" and refers to "at least two efforts" in her Complaint. [DE 1, ¶¶160, 161, 162.].

946 (2009) (the enterprise "must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose."). As Defendants SPS et al. argue, Plaintiff has not alleged nor identified the existence of an "enterprise." Plaintiff's bare-bone accusation that "buying and selling of Notes in the national marketplace seems to qualify" [DE 1, ¶160(b) is not sufficient to allege the existence of an enterprise, and for this reason, Plaintiff's RICO claim is dismissed.

### 2. Racketeering

Plaintiff's RICO claim is also dismissed for failing to properly allege a pattern of racketeering activity as required by §1962(c). To establish a pattern of racketeering activity, a plaintiff must allege at least two related acts of racketeering activity that amount to or pose a threat of continued criminal activity. *Brown v. Cassens Transp. Co.*, 546 F.3d 347, 354 (6th Cir. 2008). The RICO statute enumerates dozens of crimes that constitute racketeering activity. *See* 18 U.S.C. § 1961(1).

As Defendants SPS et al. maintain, rather than alleging the required "racketeering activity" actionable under RICO, Plaintiff lists three federal criminal but does not articulate how the statutes may apply to this case and how they were violated by Defendants. [DE 1, ¶161]. The crimes upon which Plaintiff relies,

§ 1341 (mail fraud), § 1343 (wire fraud), and § 1344 (financial institution fraud), require the heightened specificity of Fed. R. Civ. P. 9, as Defendants SPS et al. contend. *See Paycom Billing Servs., Inc. v. Payment Res. Int'l*, 212 F. Supp. 2d 732, 736 (W.D. Mich. 2002). Plaintiff has not made any specific allegations with respect to mail fraud, wire fraud, or financial institution fraud including the who, what, when, and where of such fraudulent activity as required by Fed. R. Civ. P. 9, likewise, dismissal of the RICO claims is necessary.

Plaintiff further alleges that "at least two efforts and attempts were made to falsely collect" a "false debt" with an "intent to defraud and cheat plaintiff in a scheme to fabricate the truth of the error then add additional false charges to the loan, then and now, never due." [DE ¶162]. Plaintiff also relies on her general mortgage fraud accusations in support of her RICO claim. [DE 22, Section IV.]. However, as Countrywide and BANA highlight, the Sixth Circuit has recognized that an unlawful threat of foreclosure and mortgage fraud are not recognized as predicate acts under RICO, and has stated that they can be dismissed immediately. 18 U.S.C. § 1961(1)(B); *Otworth v. Budnik,* 594 F. App'x 859, 862 (6th Cir. 2014) *cert. denied*, 135 S. Ct. 1905, 191 L. Ed. 2d 773 (2015).

Regardless, as Defendants argue, Plaintiff's allegations of racketeering conduct by Defendants do not meet the minimal

requirements of factual specificity and sufficiency "to raise a right to relief above the speculative level," and are also dismissed on this basis. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007).

### 3. Collection of an Unlawful Debt

Plaintiff also alleges that Defendants have violated RICO based on the collection of an unlawful debt. RICO defines "unlawful debt" as a debt "incurred or contract in gambling activity" or "which is unenforceable under State of Federal law in whole or in part…because of the laws relating to usury." 18 U.S.C. § 1961(6). Plaintiff's allegations do not fall within either category and, therefore, are dismissed for this reason as well.

### 4. RICO Statute of Limitations

The defendants' final argument with respect to dismissal of Plaintiff's RICO claim rests on the four-year statute of limitation that applies to civil RICO actions. *Agency Holding Corp. v. Malley-Duff & Associates, Inc.*, 483 U.S. 143 (1987); *Hofstetter v. Fletcher*, 905 F.2d 897, 904 (6th Cir. 1988). The four-year statute of limitation "begins to run when the plaintiff knows or has reason to know of the RICO injury which is the basis of his action." *Coal-Mac, Inc. v. JRM Coal Co.*, 734 F.Supp. 499, 501 (E.D. Ky. 1990).

All specific allegations in the Complaint relate to the loan origination, which Plaintiff alleges occurred in 2004, and the loan modifications, which Plaintiff alleges occurred in 2008 and

2010. [DE 1]. Plaintiff's filed her Complaint on April 14, 2015, therefore any RICO claims relating to the loan origination and modifications are barred by the four-year statute of limitation.[7]

### D. Count VII: Plaintiff Has Failed to State a Claim Alleging Violations of TILA or RESPA.

In her seventh cause of action, Plaintiff seeks to have the 2004 Loan Agreement rescinded under the Truth in Lending Act and the Real Estate Settlement Procedures Act. [DE 1, ¶165-166].

The Truth in Lending Act ("TILA"), 15 U.S.C. § 1601, *et seq.*, "was enacted to promote the informed use of credit by consumers by requiring meaningful disclosure of credit terms." *Barrett v. JP Morgan Chase Bank, N.A.*, 445 F.3d 874, 875-876 (6th Cir. 2006)(quoting *Begala v. PNC Bank, Ohio, N. A.*, 163 F.3d 948, 950 (6th Cir.1998)). At the outset, Plaintiff's TILA claims against SPS and MERS are dismissed because the statute generally does not impose liability on servicers of a loan unless the servicer is also the owner of the obligation. 15 U.S.C. § 1641(f)(1); *see also Yaldu v. Bank of Am. Corp.*, 700 F. Supp. 2d 832, 841-42 (E.D. Mich. 2010). There are no allegations that SPS or MERS is the owner of the loan. [DE 1 at ¶12a].

---

[7] Based on the case law cited by Defendants SPS, et al., the Court disagrees with Plaintiff's contention that a continuing injury theory applies to RICO claims. *See Osborn v. Griffin*, 50 F. Supp. 3d 772, 806 (E.D. Ky. 2014).

Plaintiff alleges to have given timely written notice of her right to cancel the note based on failure to receive the required TILA disclosures but does not specify to whom she sent a written notice. [DE 1, ¶164]. At a minimum, Defendants must have fair notice of what claims are being made against them and the grounds upon which they rest. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Twombly*, 550 U.S. at 555) (alteration in original). Having failed to specify to whom she gave notice pursuant to TILA, Plaintiff's TILA claim is dismissed.

Finally, even if Plaintiff asserted a valid TILA claim against a specific Defendant, her claim is time-barred. [DE 19, p. 13; DE 18-1, p. 20]. TILA provides an obligor the right to rescind up to three years after the date of the consummation of the transaction or upon the sale of the property, whichever occurs first. 15 U.S.C. § 1635(f). Suit based on an attempted rescission must be brought by the borrower within one year of seeking rescission under TILA. 15 U.S.C. §1640)(e). As stated by the U.S. District Court for the District of Columbia:

> Under TILA, borrowers have three business days after the loan is consummated to exercise their right of rescission and cancel the transaction. *See* 15 U.S.C. § 1635(a). If the creditor fails to provide all material disclosures and/or proper notice of the right to rescind, however, a borrower's right of rescission is extended to three years from the date of settlement. *See* 15 U.S.C. §1635(f). If the borrower exercises her right of rescission during this extended period, the creditor's denial of rescission or its failure to

> properly respond to the rescission within 20 days
> after receipt of notice gives rise to a potential
> violation under TILA and commences the running of
> TILA's one year statute of limitations.

*Johnson v. Long Beach Mortgage Loan Trust 2001-4*, 451 F. Supp. 2d 16, 40 (D.D.C. 2006); *see also Knittel v. First Fin. Mortgage Corp.*, No. CIV.A. 08-44-JBC, 2009 WL 1702174, at *2 (E.D. Ky. June 17, 2009). Since the consummation of the original loan occurred in 2004, Plaintiff had until 2007 to submit her notice of rescission, and until 2008 to file suit under TILA, which Plaintiff did not do until April of 2015. Plaintiff's TILA claim is dismissed on this basis as well.

Plaintiff also asserts a claim under the Real Estate Procedures Act ("RESPA"), 12 U.S.C. § 2607. [DE 1, ¶165]. Although Plaintiff does not specify upon which provision of RESPA she relies, it appears to the Court that Plaintiff is alleging a violation of 12 U.S.C. § 2605(e).[8] Section 2605(e) of RESPA provides borrowers of a loan a private action against a loan servicer for failure to respond, an incomplete response, or an untimely response to a qualified written request ("QWR") related to the servicing of a loan. 12 U.S.C. § 2605(e). A QWR is a written correspondence that includes the name and account of the borrower and a statement setting forth the reasons for the belief

---

[8] Defendants surmise that Plaintiff's RESPA claim is based on 12 U.S.C. § 2607 [DE 18-1 at 22], although the Court finds no basis for this claim in the Complaint.

that the account is in error or a request for information. *Marais v. Chase Home Fin., LLC*, 24 F. Supp. 3d 712, 719 (S.D. Ohio 2014)(quoting 12 U.S.C. § 2605(e)(1)(B)(2006)).  Within 60 days of receiving a QWR, a servicer is required to take action by correcting the account or providing requested information, and by providing an explanation as to what action was or was not taken by the servicer as necessary.  *Id*.

Although Plaintiff alleges she contacted BANA in writing and demanded information about the variable payment calculations on her loan pursuant to RESPA, and that BANA never responded, [DE 1, ¶17], "[t]he Sixth Circuit has made it clear that liability for RESPA for failure to respond to QWRs attaches only to loan servicers." *Morton v. Bank of Am., N.A.*, No. 1:12-CV-511, 2013 WL 6491089, at *5 (W.D. Mich. Dec. 10, 2013).  Since Plaintiff has not alleged that BANA is a servicer of her loan, Plaintiff's RESPA claim is dismissed.[9]

### E. Counts IV, VII, and VIII: Plaintiff Has Failed to State a Claim for Fraud.

Plaintiff asserts two claims of fraud:  one concerning the formation of the 2004 Loan Agreement and statements made to her at that time by AWL, and the other relating to alleged

---

[9] The Court declines to dismiss Plaintiff's RESPA claim on the basis of the three (3) year statute of limitations for violations of 12 U.S.C. § 2605 since it is not clear from the face of the Complaint when Plaintiff submitted her alleged QWR.  *See* 12 U.S.C. § 2614.

misrepresentations made during an October 7, 2008 telephone call with a BANA representative.  In alleging fraud, Rule 9(b) requires a party to state with particularity the circumstances constituting fraud.  Fed. R. Civ. P. 9(b).  To be pled with particularity, the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentations must be stated.  *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007); *Eva v. Midwest Nat'l Mortg. Bank, Inc.,* 143 F.Supp.2d 862, 877 (N.D.Ohio 2001).  Because Plaintiff makes no particular fraud allegations against Countrywide, Deutsche Bank, SPS, MERS or Hierman, all fraud claims against them are dismissed.

### 1. The 2004 Loan Agreement

Plaintiff's first fraud claim relates to the origination of her 2004 Loan Agreement. [DE 1, ¶ 12b,c].  Plaintiff alleges that she was promised by AWL, the loan originator, a fixed rate note of 4.25 percent for 30 years, which is the document she believed to have signed at her loan closing in 2004.  [DE 1, 12f].  However, Plaintiff alleges that the document she signed was switched out for a note with terms to which she did not agree, namely an adjustable rate, and with what "appears to be forged signatures and certainly not what she recalls signing in 2004." [DE 1, ¶¶ 12f-12h].  Plaintiff states that she discovered the alleged fraudulent activity "in or about November 20, 2007 after BANA suspiciously increased the monthly payments" [DE 1, ¶16] and upon receiving her

loan documents from an escrow company in or about 2007. [DE 1, ¶12f]. In her seventh cause of action, Plaintiff seeks to have the 2004 Loan Agreement rescinded for fraud in the formation of the contract and seeks restitution of all sums paid by down payment and monthly payments. [DE 1, ¶ 165]. Importantly, all fraud allegations regarding the origination of the loan relate to AWL, who is not a named Defendant in this action. For this reason, Plaintiff's fraud claim relating to the origination of her loan is dismissed.

Even if the Court were to assume that the conduct of AWL may be imputed to Countrywide, which the Court declines to do without more specific allegations as required by Rule 9, under Kentucky law, an action for relief or damages on the ground of fraud or mistake must be commenced within five years after the cause of action accrues. KRS 413.120. Plaintiff alleges to have discovered the fraudulent loan documents in November of 2007 [DE 1, ¶16], therefore, a claim for rescission based on fraudulent misrepresentation regarding the formation of the 2004 Loan Agreement must have been brought by November of 2012. Having not brought this claim until April of 2015, Plaintiff's attempt to

disaffirm the 2004 Loan Agreement on the basis of fraud is dismissed.[10]

In her eighth cause of action, Plaintiff makes a duplicative fraud allegation that her 2004 Loan Agreement was void *ab initio* stating there was no meeting of the minds based on the inclusion of an adjustable rather than a fixed interest rate. [DE 1, ¶164-168]. Although couched as a breach of a written contract, Plaintiff is in fact disaffirming the contract and seeking rescission and restitution, which, as stated above, is also dismissed as outside the five-year statute of limitations set forth in KRS 413.120(11) since plaintiff alleges to have discovered the fraudulent loan documents in 2007. [DE 1, ¶12f].

Plaintiff also claims her 2004 loan documents were notarized by a "phantom notary" and alleges several defects with the notary acknowledgement.  [DE 1, ¶12b,c,d,e,f].  Defendants SPS et al. move to dismiss this claim on the basis that KRS 61.060 prohibits challenges to notarized documents valid on their face; the requirements for a Kentucky notary certificate are fulfilled in this case pursuant to KRS 423.130 and KRS 423.140; and because the five year statute of limitations for fraud has passed.  [DE 18-1

---

[10] As Defendants SPS et al. contend, if Plaintiff truly seeks a return to status quo based on rescission, she will be required to pay the mortgage proceeds back to Defendant lenders. Plaintiff has not alleged that she is prepared to restore to Defendants the monies she received to purchase her residence, moreover, this is not the result Plaintiff appears to seek.

at 4-6]. Defendants Countrywide and BANA move to dismiss any claims based on the origination of Plaintiff's loan on the basis that Plaintiff does not allege that Countrywide or BANA were involved in the origination of her loan. [DE 19 at 3].

Although Plaintiff alleges improper notarization of her loan documents, the claim of relief she seeks is not distinguishable from the face of the Complaint. To the extent Plaintiff seeks relief from Doe I-Notary Public, the "phantom notary," she must seek recovery from the notary directly, not simply miscellaneous relief. KRS 61.060; *In re St. Clair*, 380 B.R. 478, 484 (B.A.P. 6th Cir. 2008). Because Plaintiff has merely joined Defendants L.A. Llenos and Doe I –Notary Public to this action but not sought recovery from the notaries based on their alleged dereliction, Plaintiff has not sought direct action from the notary as required by KRS 61.060; *In re St. Clair*, 380 B.R. at 484.

Moreover, if Plaintiff is alleging improper notarization as part of her fraud claim, that claim is barred by the five year statute of limitations set forth in KRS 413.120(11). To the extent Plaintiff is in fact attempting to allege a claim of professional negligence against the notaries, which the Court is not concluding is a valid claim or not, any such claim must be brought within one year from the date of the occurrence or from the date when the cause of action was, or reasonably should have been, discovered by Plaintiff. KRS 413.245. Plaintiff alleges the documents were

defectively notarized on or about September 22, 2004 and that she obtained copies of the documents in or about 2007, however, this action was not filed until April of 2015, which makes any fraud or professional negligence claim untimely. [DE 1 at ¶12c,f]. For all of these reasons, Plaintiff's claim regarding defective notarization of her loan documents are dismissed.

### 2. October 7, 2008 Telephone Conversation

Plaintiff asserts an additional fraud claim relating to her October 7, 2008 telephone conversation with Ms. Garcia of BANA wherein Ms. Garcia allegedly promised Plaintiff a decrease in her mortgage payment amount if Plaintiff failed to pay her loan for three months. [DE 1, ¶76-77]. Plaintiff alleges that in reliance on Ms. Garcia's promise, she did not pay her loan for three months and, upon paying the alleged newly agreed upon lower payment amount in the fourth month, BANA failed to recognize the new agreement but instead issued a default notice on or about February 13, 2009. [DE 1,¶76c-d]. Plaintiff alleges damages in a sum not less than five million dollars as a result of the alleged fraudulent activities. [DE 1, ¶77].

Pursuant to KRS 413.120, a fraud claim must be commenced within five years after the cause of action accrued. Here, Plaintiff discovered the alleged fraudulent misrepresentation in February of 2009, such that her fraud claim would have had to have been brought by February 2014 to be timely. Plaintiff filed her

Complaint, including her claim of fraud, on April 14, 2015, which is outside the five year statute of limitations for fraud claims in Kentucky.  On this basis, her fraud claim based on the October 7, 2008 telephone call with BANA is also dismissed.

Plaintiff relies on a "continuous injury" theory to argue that the five-year statute of limitation does not apply to her fraud claims. [DE 22, p. 6; DE 21, p. 9].  Plaintiff argues that her continuous injury is a higher monthly loan payment as a result of Ms. Garcia's alleged fraudulent misrepresentation in 2008. Plaintiff's theory is not in accord with Kentucky case, which provides a narrow exception to the five-year statute of limitations if the circumstances are such that plaintiff did not only not discover the fraud during the five year period but the fraud could not have been discovered with reasonable diligence. *Skaggs v. Vaughn*, 550 S.W.2d 574, 577 (Ky. Ct. App. 1977).  Having admitted to discovering the alleged acts of fraud in or about November 10, 2007 when her monthly payments increased and in February of 2009 when a Notice of Default was issued, Plaintiff cannot make a tolling claim based on lack of discovery.  For these reasons, Count IV of Plaintiff's Complaint is dismissed.

### F. Count VIII: Plaintiff Has Failed to State a Claim for Breach of Contract.

In Plaintiff's eighth cause of action, in addition to seeking rescission of the 2004 Loan Agreement based on fraud as discussed

above, Plaintiff alleges a breach of the oral contract made between her and BANA during her October 7, 2008 telephone conversation with Ms. Garcia.  Oral contracts in Kentucky are subject to a five-year statute of limitation, likewise, Plaintiff's claim is dismissed as untimely. *See Trischler v. Haire*, No. 5:07-437-JMH, 2009 WL 1515763 (E.D. Ky. June 1, 2009)(applying KRS 413.120).

In addition, as Defendants argue, any agreement made between Plaintiff and BANA during the alleged October 7, 2008 telephone call would have been a modification to Plaintiff's 2004 Loan Agreement, a contract covered by the statute of frauds.  "The Kentucky Supreme Court has held that any modification materially altering the terms of a contract covered under the statute of frauds must also comply with the statute of frauds, and thus must be in writing." *Parker v. Kentucky Housing Corp.*, 2015 WL 301222 (Ky. Ct. App. Jan 23, 2015)(citing *Farmers Bank & Trust Co. of Georgetown v. Willmott Hardwoods, Inc.*, 171 S.W.3d 4, 8 (Ky. 2005)). Because the oral contract that Plaintiff alleges BANA breached is not in writing and does not satisfy the statute of frauds, it is an invalid contract.  Accordingly, Plaintiff's breach of contract claim based on this invalid oral contract is dismissed.

### G. Counts III and V:  Plaintiff Has Failed to State a Claim Entitling Her to a Declaratory Judgment or Accounting.

In her third cause of action, Plaintiff seeks a declaration regarding the parties' respective rights and duties under her note

and mortgage, specifically, a declaration as to whether she has a legal duty to continue making her mortgage payments and a declaration as to ownership of the note and the right to foreclose. [DE 1, 46]. Defendants argue that this claim should be dismissed because a request for declaratory relief must be based on an underlying substantive claim, and Plaintiff has failed to state a claim upon which relief can be granted as to any of her tangential claims. [DE 19, p. 11; DE 18-1, p. 12-13]. The Court agrees with Defendants. "A request for declaratory relief is barred to the same extent that the claim for substantive relief on which it is based would be barred." *Int'l Ass'n of Machinists & Aerospace Workers v. Tennessee Valley Auth.*, 108 F.3d 658, 668 (6th Cir. 1997). Since Plaintiff has not adequately pleaded her substantive claims as set forth above, the court has no basis upon which to issue declaratory relief, and therefore, Plaintiff's claim seeking a declaratory judgment is dismissed.

    In her fifth cause of action, Plaintiff seeks an accounting of her entire loan account from all Defendants to determine the correct amount of the loan, note, payments made, payments due, credits due, and payoff balance. [DE 1, 123-124a]. Plaintiff's request for an accounting, like her request for declaratory judgment, is a remedy for the wrongdoings alleged above, not a separate, actionable claim. Because Plaintiff's accounting claim is premised on underlying claims, the Court denies this relief

where all of the underlying claims have fallen. *See Cmty. Ties of Am., Inc. v. NDT Care Servs., LLC*, No. 3:12-CV-00429-CRS, 2015 WL 520960, at *26 (W.D. Ky. Feb. 9, 2015).

**IV.  CONCLUSION**

For the reasons articulated above, Plaintiff has failed to state a claim upon which relief may be granted.  Accordingly, **IT IS HEREBY ORDERED** that:

1. the Motion to Dismiss filed by SPS, Deutsche Bank, MERS, and Hierman [DE 18] is **GRANTED**;

2. the Motion to Dismiss filed by Defendants Countrywide and BANA [DE 19] is **GRANTED**;

3. all claims alleged in the Complaint [DE 1] against all Defendants are **DISMISSED WITH PREJUDICE**;

4. all pending motions or requests for relief are **DENIED AS MOOT**;

5. all deadlines and scheduled proceedings are **CONTINUED GENERALLY**;

6. that the Clerk shall **STRIKE THIS MATTER FROM THE ACTIVE DOCKET**;

7. that this ORDER is **FINAL AND APPEALABLE ORDER** and **THERE IS NO JUST CAUSE FOR DELAY**.

This the 29th day of October, 2015.



Signed By:

**_Joseph M. Hood_**

**Senior U.S. District Judge**